No. 93-437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

BEN DANIEL ENOCH, JR.,

    Defendant and Appellant.

FILED

DEC 13 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Anne H. Watson, Herman A. Watson III; Watson &
        Watson, Bozeman, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Jennifer
        Anders, Ass't, Attorney General, Helena, Montana

        Betty Wing, Deputy County Attorney, Missoula,
        Montana


Submitted on Briefs:    September 22, 1994

Decided:    December 13, 1994

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Ben Daniel Enoch (Enoch) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on his Alford plea to the felony offense of issuing bad checks. We reverse, concluding that the District Court abused its discretion in denying Enoch's motion to withdraw his guilty plea.

On October 23, 1992, Enoch was charged with a felony violation of § 45-6-316, MCA, issuing a bad check (common scheme). He entered a plea of not guilty on November 18, 1992. Enoch's next appearance before the District Court was on May 10, 1993, for a change of plea. At that time, Enoch's counsel advised the court:

> Your Honor, I have spoken to my client, and I am not sure if he wants to change his plea. I told him it was his decision. For the record, there is no plea bargain. Ms. Wing told me she would recommend a ten-year sentence, and I told my client, with that in mind, we could plead this straight up and argue the sentence he wants, and he expressed some reservations this morning about doing that, so we need to get information from him about what he wants to do.

The District Court asked Enoch whether he wanted to go to trial; Enoch replied that he did. The court then recessed, with the intent of reconvening fifteen minutes later to schedule a trial date.

When the court reconvened, Enoch's counsel advised that Enoch wanted to withdraw his not guilty plea and enter an Alford plea of guilty. No written waiver of rights was prepared or executed and no negotiated plea bargain agreement was made. After a short interrogation, the District Court accepted Enoch's Alford plea and

2

ordered a presentence report.

Enoch appeared before the District Court on June 28, 1993, for sentencing. Prior to sentencing, he orally requested to withdraw his guilty plea. The District Court denied Enoch's motion, adjudged him guilty of the offense charged, and sentenced him to ten years imprisonment in the Montana State Prison.

Enoch raises five issues on appeal. The dispositive issue is whether the District Court erred in denying Enoch's motion to withdraw his guilty plea. Because we reverse on that issue, we need not address the other issues raised on appeal.

The principles governing the entry and withdrawal of guilty pleas are contained in both statute and case law. See State v. Radi (1991), 250 Mont. 155, 818 P.2d 1203. Trial courts must meet statutory requirements such as those contained in §§ 46-12-210 and 46-16-105(1), MCA (1991), before accepting a guilty plea. Section 46-16-105(2), MCA, relates to withdrawal of a guilty plea.

No set rule or standard exists under which a trial court addresses a request to withdraw a guilty plea; each case must be considered in light of its unique record. Radi, 818 P.2d at 1206. Our standard in reviewing a district court's denial of a motion to withdraw a guilty plea is whether the court abused its discretion. State v. Reynolds (1992), 253 Mont. 386, 390, 833 P.2d 153, 155.

Three factors must be balanced when considering a criminal defendant's attempt to withdraw a guilty plea: (1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the

3

plea; (2) the promptness with which the defendant attempts to withdraw the plea; and (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. Radi, 818 P.2d at 1206 (citation omitted); State v. Koepplin (1984), 213 Mont. 55, 59-60, 689 P.2d 921, 923. Because it is undisputed that Enoch's guilty plea was not the result of a plea bargain, the third factor weighs in favor of allowing withdrawal of the plea.

With regard to the promptness factor, it has long been the rule that a request to withdraw a guilty plea should be made within a reasonable time. State v. Nance (1947), 120 Mont. 152, 165, 184 P.2d 554, 561. Because each case presents its own unique factual circumstances, we have declined to adopt specific parameters defining the timeliness of a motion to withdraw. In State v. Laverdure (1984), 212 Mont. 31, 35, 685 P.2d 375, 377, we concluded that a ten-month delay between the guilty plea and motion to withdraw was relatively prompt; in State v. La Tray (1986), 220 Mont. 358, 363, 715 P.2d 52, 55, a fourteen-month delay was not timely.

Here, Enoch pled guilty on May 10, 1993. Shortly thereafter, during an interview with probation department personnel preparing the presentence report, Enoch stated that he wanted to withdraw his plea. He reiterated that request during his next appearance before the District Court on June 28, 1993, one and one-half months after the entry of his guilty plea and prior to sentencing.

The State of Montana (State) suggests, without citation to

4

authority, that we should consider Enoch's indecision about whether to plead guilty or not guilty over the eight-month period between the filing of the information and the motion to withdraw the guilty plea in determining whether Enoch's request to withdraw the plea was timely. Such an approach would radically alter the promptness factor from one examining time between entry of a guilty plea and a motion to withdraw that plea to one considering time between the filing of the charge and efforts to withdraw a guilty plea entered sometime thereafter. Such an approach also would permit us to hold a criminal defendant accountable for all time after filing of the charges in determining whether a motion to withdraw a guilty plea is timely. Neither our cases nor the fundamental concepts underlying the promptness factor support the State's position. See State v. Mahoney (Mont. 1994), 870 P.2d 65, 68-69, 51 St.Rep. 160, 162; Reynolds, 833 P.2d at 156. We conclude that Enoch's request to withdraw his guilty plea, which followed the entry of the plea by less than two months, was made within a reasonable time. Thus, the promptness factor also weighs in favor of allowing the withdrawal of Enoch's plea.

The final factor we consider is the adequacy of the District Court's interrogation at the time the guilty plea was entered. Enoch argues that the court's interrogation was inadequate and, as a result, that his plea was neither knowing nor voluntary.

We have determined that a court's interrogation on a change of plea is adequate where the court:

> examines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary,

5

he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the fact upon which his guilt is based.

Mahoney, 51 St.Rep. at 161 (citations omitted). In addition, it is well-settled that a guilty plea must be a knowing and intelligent choice among the alternative courses of action open to the defendant. Radi, 818 P.2d at 1206; quoting North Carolina v. Alford (1970), 400 U.S. 25, 32, 91 S.Ct 160, 164, 27 L.Ed.2d 162, 168.

In this case, the following colloquy took place between the District Court and Enoch at the time Enoch entered his guilty plea:

> THE COURT: Mr. Enoch, I would like to explain a few things to you. First of all, by withdrawing your plea of not guilty and entering a plea of guilty, you're giving up virtually all of your rights except the right to be represented by an attorney. You lose the possibility of being found not guilty or being found guilty of a lesser included offense. You lose the right to confront witnesses that would be called to testify against you in a trial. You lose the right to subpoena witnesses to testify on your behalf, and you lose the right to a jury trial. Do you understand that?
>
> MR. ENOCH: Uh-huh.
>
> THE COURT: It is still your desire to withdraw your plea of not guilty?
>
> MR. ENOCH: (No verbal response.)
>
> MR. BECCARI: Do you still want to plead guilty?
>
> (Whereupon, Mr. Beccari had a discussion with his client off the record.)
>
> MR. BECCARI: Your Honor, he is going to enter an Alford plea.
>
> MR. ENOCH: Yes sir.
>
> THE COURT: Your not guilty plea is ordered withdrawn.

6

Are you under the influence of any alcohol, medication, or other substance that would affect your reasoning powers?

MR. ENOCH: Medication.

THE COURT:Would that affect your reasoning powers?

MR. ENOCH: I wouldn't think so.

THE COURT: Are you satisfied with the services of your attorney?

MR. ENOCH: Yes.

THE COURT: It is my understanding that on the plea of guilty, the State is going to recommend ten years in prison, and the defense is going to be able to argue for whatever sentence they want.

MS. WING: That's correct.

THE COURT: Other than this understanding, have any promises or threats been made to you to induce you to enter a guilty plea?

MR. ENOCH: Not overtly, no.

THE COURT: In any way?

MR. ENOCH: Well, just the fact that you face a lot more severe sentence by risking going to court. That is the only thing.

THE COURT: So just the sentencing factor is the only thing that has entered into the discussions with you, correct?

MR. ENOCH: Yes.

THE COURT: The Information alleges -- the plea of not guilty is ordered withdrawn. Do you have a copy of the information?

MR. ENOCH: No -- yes, I do -- not with me.

THE COURT: The Information alleges that you committed the offense of issuing bad checks, a felony. That carries a penalty of up to ten years in the Montana State Prison and/or a fifty-thousand dollar fine. The allegation is that on or about and between June 12 through June 27, 1992, you issued or delivered three or

7

more checks on a depository, First Security Bank, for the payment of money knowing that the checks would not be paid by the depository. The checks were written as part of a common scheme. How do you plead to that offense?

MR. ENOCH: Guilty.

By statute in Montana, a court must determine that a criminal defendant understands the following, among other things, before it accepts a guilty plea:

(1)(a) the nature of the charge for which the plea is offered;
(b) the mandatory minimum penalty provided by law, if any;
(c) the maximum penalty provided by law, including the effect of any penalty enhancement provision or special parole restriction; and
(d) when applicable, the requirement that the court may also order the defendant to make restitution of the costs and assessments provided by law;

. . .

(3) that the defendant has the right:
(a) to plead not guilty or to persist in that plea if it has already been made;
(b) to be tried by a jury and at the trial has the right to the assistance of counsel;
(c) to confront and cross-examine witnesses against the defendant; and
(d) not to be compelled to reveal personally incriminating information;

. . .

(5) that if the defendant's plea of guilty is accepted by the courts, there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial;

. . .

Section 46-12-210, MCA (1991). In this case, the colloquy set forth above establishes that the statutory requirements were not met.

8

Specifically, the District Court failed to advise Enoch of: (1) the possibility that it could order restitution; (2) his right to persist in pleading not guilty; and (3) his right not to be compelled to reveal incriminating information. In addition to being statutory requirements, these are not minor or inconsequential matters. One of the court's omissions concerned the fundamental right against self-incrimination as guaranteed by the Montana and United States Constitutions. Art. II, Sec. 25. Mont. Const.; U.S. Const. Amend. V. Rights this fundamental cannot be addressed adequately by the District Court's broad statement that Enoch was "giving up virtually all of [his] rights. . . ."

The State argues that the interrogation in this case was adequate because "[t]hroughout these proceedings, the court counseled Appellant with respect to the charges, the possible punishment, and the rights which would be waived by entry of a guilty plea." Presumably, the State is relying on the colloquies which took place on separate dates in November, 1992, when Enoch was arraigned and entered his original not guilty plea. We reject this argument.

Neither the information provided to Enoch at the November arraignment and entry of not guilty plea proceedings nor the acknowledgement of rights he executed at that time meet the specific requirements of § 46-12-210, MCA (1991). The statutory requirements apply to the proceeding at which a guilty plea is to be accepted; here, the May 10 proceeding. Adopting the State's position would totally vitiate those requirements and permit

9

acceptance of a guilty plea based on information provided to a criminal defendant in bits and pieces over a long period of time. This we will not do.

The State also contends that Laverdure is on point and mandates a conclusion that the District Court's interrogation was adequate. We disagree. There, the record contained both a careful oral colloquy between the court and the defendant and a signed acknowledgement of waiver of rights by plea of guilty which contained the charge against the defendant and the associated penalty; an enumeration of the constitutional rights waived when one pleads guilty; an acknowledgement of the defendant's satisfaction with his counsel; a denial that the defendant was under the influence of drugs or alcohol; and the following statement: "I believe I am guilty of this offense because I did assault the girl." Laverdure, 685 P.2d at 377-378. At the change of plea hearing, the trial judge reviewed the written acknowledgement of waiver of rights, discussed with the defendant the constitutional rights he would relinquish by pleading guilty, and ascertained that the defendant was aware of the maximum penalties involved and that a factual basis existed for the plea. Laverdure, 685 P.2d at 377-378. We held that the interrogation was adequate under the standards delineated in State v. Lewis (1978), 177 Mont. 474, 582 P.2d 346. The record presently before us is readily distinguishable from that in Laverdure.

Here, no signed acknowledgement of waiver of rights by plea of guilty exists. It is true that Enoch executed an acknowledgement

10

of rights on November 18, 1992; an acknowledgement of rights, however, is not the equivalent of an acknowledgement of waiver of rights by plea of guilty such as the court had before it in Laverdure. Nor, as discussed above, can a form executed some six months before the entry of the guilty plea be considered timely with regard to requirements which must be met at the time the plea is accepted.

Moreover, also as discussed above, the District Court did not discuss with Enoch all of the constitutional rights he would be waiving by entering a plea. In addition, Enoch's Alford plea hardly equates to Laverdure's affirmative statement of guilt premised on the factual basis for the charge.

Thus, it is clear that Laverdure does not support the State's position here. Indeed, the record before us is a far cry from the careful, deliberate proceeding which occurred in Laverdure and which is required when a criminal defendant makes the important decision to waive the full panoply of fundamental rights by entering a guilty plea.

Nor can we say without doubt, on the record before us in this case, that the Mahoney and Radi voluntary, knowing and intelligent standard was met during the change of plea proceeding on May 10, 1993. One portion of the colloquy, concerning Enoch's medication, relates to the "not acting under the influence of drugs," "competent" and "understands" elements of Mahoney. In this regard, Enoch gave conflicting testimony regarding whether the medication he was taking would affect his reasoning powers:

11

> THE COURT: . . . Are you under the influence of any alcohol, medication, or other substance that would affect your reasoning powers?
>
> MR. ENOCH: Medication.
>
> THE COURT: Would that affect your reasoning powers?
>
> MR. ENOCH: I wouldn't think so.

This exchange should have prompted the court to inquire further regarding Enoch's medical condition, the type of medication he was taking or the effect of such medication. This is particularly true where, as here, the defendant had stated his desire to go to trial only a short time before. Further inquiry by the court may have resolved the question of what effect Enoch's medication and physical condition had on his decision to enter a guilty plea and removed any doubt raised by the exchange quoted above.

The record is also somewhat equivocal about the firmness of Enoch's decision to plead guilty during the May 10, 1993, proceedings. Following the court's question as to whether Enoch understood the rights he was waiving, Enoch responded:

> MR. ENOCH: Uh-huh.
>
> THE COURT: Is it still your desire to withdraw your plea of guilty?
>
> MR ENOCH: (No verbal response.)
>
> MR. BECCARI: Do you want to plead guilty?
>
> (Whereupon, Mr. Beccari had a discussion with his client off the record.)
>
> MR. BECCARI: Your Honor, he is going to enter an Alford plea.

Enoch's lack of response to questions from both the court and his counsel, taken together with the additional facts that his counsel

12

finally responded for him and that he had stated his desire to go to trial earlier the same day, raises doubts about the voluntary, knowing and intelligent nature of Enoch's guilty plea.

With regard to the adequacy of interrogation factor, therefore, the record is clear that the statutory requirements were not met; in addition, the record at least raises doubts about the knowing, voluntary and intelligent nature of Enoch's guilty plea. We have held that if there is any doubt that a guilty plea was not voluntarily or intelligently made, the doubt must be resolved in favor of the defendant. Koepplin, 689 P.2d at 926; citing State ex rel. Gladue v. Eighth Judicial Dist. (1978), 175 Mont. 509, 575 P.2d 65. On these bases, we conclude that the adequacy of interrogation factor relating to the withdrawal of a guilty plea-- like the promptness and plea bargain factors--weighs in favor of allowing withdrawal of the plea.

Having concluded that the three factors which must be balanced when considering a criminal defendant's attempt to withdraw a guilty plea all weigh in favor of withdrawal of the plea in this case, we hold that the District Court abused its discretion in denying Enoch's motion to withdraw his guilty plea.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

13

We concur:

_____
                Chief Justice

_____

_____

_____
                Justices

14