No. 95-473

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

JADE DEE ANDERSON,

    Defendant and Appellant.

FILED

JUL 11 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund F. Sheehy, Jr., Cannon & Sheehy
        Helena, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Micheal S. Wellenstein, Assistant Attorney
        General, Helena, Montana

        Robert M. McCarthy, Silver Bow County Attorney,
        Brad Newman, Deputy County Attorney,
        Butte, Montana

Submitted on Briefs:  June 27, 1996

Decided:  July 11, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Defendant Jade Dee Anderson appeals from the findings of fact, conclusions of law, and order issued by the Second Judicial District Court, Silver Bow County, denying his petition for post-conviction relief. We affirm.

The sole issue on appeal is whether the District Court erred in denying Anderson's petition for post-conviction relief.

BACKGROUND

This case was previously before this Court in State v. Anderson, No. 94-609, which resulted in the issuance of a noncitable opinion on July 18, 1995. The underlying facts of the original case which give rise to the present appeal are as follows:

On October 12, 1993, Anderson was charged by information in the Second Judicial District Court, Silver Bow County, with felony assault pursuant to § 45-5-202(2)(a), MCA (1991). At his initial arraignment, Anderson pled not guilty. Following arraignment, Anderson and the State arrived at a plea agreement in which the State recommended that Anderson be sentenced to the Montana Department of Corrections and Human Services for five years for the assault charge and a consecutive two years for use of a dangerous

2

weapon. The plea agreement specifically provided that the District Court was not bound by the terms of the agreement. On December 23, 1993, the court accepted the guilty plea and ordered a presentence investigation before it imposed a sentence.

On February 10, 1994, the District Court conducted a sentencing hearing. At the sentencing hearing, the court asked Anderson if his guilty plea was entered voluntarily and Anderson responded that it was. After hearing testimony, the District Court stated it would not accept the pretrial agreement. The court noted that Anderson had a prior record of two assaults, that he had used a weapon in both of them, and that he had not been required to serve time in prison on the sentences for those crimes. Anderson was informed that in the past the court had been very lenient in sentencing him and that he had failed to take advantage of that leniency. The District Court sentenced Anderson to ten years in the Montana State Prison for felony assault, six consecutive years for use of a dangerous weapon, and designated Anderson a dangerous offender pursuant to § 46-18-404, MCA. Anderson did not request to withdraw his guilty plea and he did not appeal his sentence.

On August 15, 1994, Anderson filed a petition for post-conviction relief in the District Court claiming that the District Court lacked authority to accept his guilty plea because his plea was involuntary. Anderson alleged that he did not fully understand the consequences of entering the plea and that the court erred by failing to permit him to withdraw his guilty plea at the sentencing hearing after it had rejected the plea agreement.

3

Anderson also claimed he was denied effective assistance of counsel.

On November 10, 1994, the District Court issued its findings of fact, conclusions of law, and order denying Anderson's petition for post-conviction relief. Anderson appealed to this Court arguing the following three issues:

    1. Did the District Court have authority to accept Anderson's guilty plea?

    2. Was Anderson entitled to withdraw his guilty plea pursuant to § 46-12-211, MCA?

    3. Was Anderson denied effective assistance of counsel?

We denied Anderson's first two claims and held that the District Court had authority to accept the guilty plea and did not err when it refused to allow Anderson to withdraw his plea. However, we remanded the case back to the District Court on Issue 3.

Anderson had argued that he was entitled to withdraw his guilty plea after the District Court rejected the State's sentencing recommendation because his plea agreement was made pursuant to § 46-12-211(1)(b), MCA. We held that there was substantial evidence in the record to support a finding that the parties had instead entered into a plea agreement pursuant to § 46-12-211(1)(c), MCA, which does not require the District Court to allow the defendant to withdraw his guilty plea. See § 46-12-211(4), MCA.

We also noted, however, that under a plea agreement made pursuant to § 46-12-211(1)(c), MCA, the court was required to

4

advise Anderson "that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." See § 46-12-211(2), MCA. Since the District Court did not so advise Anderson, we held that if Anderson's substantial rights were affected by that omission, it could serve as the basis for setting aside the plea and sentence on appeal. Anderson, slip op. at 10.

The difficulty for this Court was that there was no evidence contained in the record regarding the nature of the advice given by Anderson's attorney, Dan Sweeney, prior to his change of plea. If his attorney had informed him of the effect of the guilty plea, then Anderson was not prejudiced by the court's failure to do the same and the District Court's omission would not have been a basis for setting aside the plea and sentence and Sweeney would have had no duty to advise Anderson of his right to appeal that omission. The record lacked any evidence on this issue and we were therefore unable to determine whether the District Court's error of omission was harmless.

On remand we instructed the District Court to conduct an evidentiary hearing to determine whether Sweeney had fully informed Anderson of the effect of his guilty plea. If Anderson was fully advised, then the District Court's failure to advise Anderson he had no right to withdraw his guilty plea was harmless error. However, if Sweeney did not advise Anderson that he would not be able to withdraw his plea, the District Court's omission was an error which affected Anderson's substantial rights and could have

5

been a basis for setting aside his plea and sentence. Under those circumstances, Sweeney's failure to advise Anderson of that error could constitute ineffective assistance of counsel.

On August 29, 1995, the District Court conducted a hearing on the matter and on August 31, 1995, the court issued its findings of fact, conclusions of law, and order denying Anderson's petition. The District Court found that Sweeney had met with Anderson on several occasions and had advised him of the consequences of his guilty plea, including the fact that the court was not required to allow him to withdraw his plea if it rejected the recommended sentence. The District Court concluded that Anderson had failed to demonstrate that Sweeney's performance fell below the standard of competence demanded of attorneys in criminal cases and that Anderson failed to demonstrate that he was prejudiced by Sweeney's alleged deficient performance. The court concluded that the court's failure to warn Anderson that he would not be allowed to withdraw his guilty plea did not affect his substantial rights. This appeal followed.

## DISCUSSION

Did the District Court err in denying Anderson's petition for post-conviction relief?

The standard of review for a denial of a petition for post-conviction relief is whether substantial evidence supports the district court's findings and conclusions. State v. Sheppard (1995), 270 Mont. 122, 127, 890 P.2d 754, 757 (citing State v. Barrack (1994), 267 Mont. 154, 159, 882 P.2d 1028, 1031). In the

present case, our inquiry is narrowly focused to determine if substantial evidence exists to support the District Court's finding and conclusion that Sweeney advised Anderson that he would not be able to withdraw his guilty plea if the court rejected the sentence recommended in the plea agreement.

Anderson argues that the District Court's findings of fact are clearly erroneous and that its conclusions of law should therefore be vacated. Anderson claims that even though Sweeney testified he had discussed the consequences of the guilty plea with Anderson, he did not advise the court at the change of plea hearing that Anderson was aware of such consequences. Anderson claims that Sweeney's advice to Anderson was sporadically given in bits and pieces and cites to State v. Enoch (1994), 269 Mont. 8, 887 P.2d 175, to argue that such sporadic advice does not satisfy the requirements of § 46-12-210, MCA.

Anderson also argues that the acknowledgement of waiver of rights form executed during the change of plea hearing did not indicate that he could not withdraw his guilty plea if the court rejected the plea agreement. He claims that such a deficiency in the acknowledgment form was contrary to the requirements of § 46-12-210, MCA, and its mandate that the defendant understand that he may not be entitled to withdraw his guilty plea if the court does not accept the plea agreement.

The State argues that the record clearly reveals that Sweeney advised Anderson prior to his pleading guilty that he could not withdraw his guilty plea if the District Court rejected the plea

7

agreement. Contrary to Anderson's suggestions, the State argues that Sweeney's advice concerning the guilty plea was not provided in a sporadic fashion over a long period of time, nor was it provided only at the sentencing hearing after the guilty plea had already been accepted.

The State agrees with Anderson that the acknowledgement of waiver of rights form did not inform him that he could not withdraw his guilty plea. However, the State maintains that the lack of this language in the waiver form does not mean that Anderson was unaware that he could not withdraw his plea if the court rejected the plea agreement.

Sweeney testified at the evidentiary hearing as follows:

Q: Did you negotiate this plea agreement with Mr. Anderson's approval, or was this on your own initiative?

A: I did it with Mr. Anderson's approval. In fact, the difficult part of that was that Jade did not want to go to trial from day one, and he told me that. While I recommended to him on a few occasions that he should prepare for trial, he told me that he had no interest, did not want to go to trial. He wanted me to try to obtain for him the best plea bargain agreement that I could.

. . . .

Q: And you participated in the change of plea hearing in December of 1993?

A: I did.

. . . .

Q: Did you have reservations about the plea agreement in light of your experience or knowledge of the prior judge, the judge in this case, Judge Sullivan?

A: Yes, sir, I did.

8

. . . .

Q: Dan, at any time during the representation of Mr. Anderson through that December 1993 change of plea hearing, did you ever advise him that if the judge did not go along with the plea agreement he would be allowed to withdraw his guilty plea?

A: No, sir.

. . . .

Q: Dan, what did you tell Mr. Anderson, if you recall, was the consequence of a guilty plea in December of 1993?

A: I explained to him the potential as the Court had talked to him about it that if he entered a plea of guilty, I went over with him the potential sentence, and also the fact that because he was charged with a crime that involved the use of a weapon he could have extra years tacked on to him.

I also told him and warned him the problem here again is because he had two prior felony convictions that this was, you know, a very serious situation as far as he may be looking at going to prison. The judge may not go along with the plea bargain agreement and, therefore, I advised him that he better be very, very certain before he enters a plea of guilty and that once he did that, he would not be able to withdraw that guilty plea.

The foregoing testimony indicates Sweeney informed Anderson that he would not be able to withdraw his guilty plea if the court refused to accept the plea agreement.

While it is conceded that the acknowledgment of waiver of rights form did not contain language informing Anderson that he could not withdraw his guilty plea, § 46-12-210(2), MCA, states that:

> The requirements of subsection (1) [the requirement that the defendant understand that he may not be entitled to withdraw the guilty plea if the plea agreement is not accepted] may be accomplished by the defendant filing a written acknowledgment of the information contained in subsection (1).

9

The clear language of the statute indicates that the requirements of § 46-12-210(1), MCA, may be satisfied by a written acknowledgment form. However, such a procedure is not the only mechanism to ensure the defendant understands his rights concerning the entry of a guilty plea. In the present case, Sweeney's advice was sufficient to meet the requirements of § 46-12-210(1), MCA.

Furthermore, the facts and circumstances presented in Enoch are distinguishable from those involved in the present case. In Enoch we reversed the district court's denial of the defendant's motion to withdraw his guilty plea. We based our decision on the equivocal nature of the plea, noting that the defendant's attorney, rather than the defendant himself, entered the plea. We also expressed concern over the defendant's medical condition as he was taking medication which may have affected his decision to enter the plea. We stated that the statutory requirements of § 46-12-210, MCA, apply to the proceeding at which a guilty plea is to be accepted, and emphasized that the defendant was presented with the required information six months prior to the plea hearing when he was arraigned and entered his original not guilty plea. Enoch, 887 P.2d at 180. In the present case, Anderson voluntarily and understandingly entered his guilty plea and Sweeney advised Anderson of the consequences of entering the guilty plea in a timely manner.

Finally, in response to Anderson's contention that the District Court erred by finding that his testimony was not credible, we note that it is not the function of this Court to

10

determine which witnesses are more credible than others. We have stated that the weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact and, when conflicting evidence exists, it is within the province of the trier of fact to determine which will prevail. State v. Flack (1993), 260 Mont. 181, 189, 860 P.2d 89, 94.

We conclude that substantial evidence exists to support the District Court's findings and conclusions that Sweeney advised Anderson that the court was not required to allow him to withdraw his guilty plea if it rejected the recommended sentence. Thus, the District Court's failure to similarly advise Anderson did not affect his substantial rights. The District Court's omission was harmless error which does not provide a basis for setting aside Anderson's guilty plea. Sweeney therefore had no duty to advise Anderson of his right to appeal and Sweeney's actions cannot be considered as a basis for a claim of ineffective assistance of counsel.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

11

Justice James C. Nelson specially concurs.

I concur in our opinion in this case primarily because § 46-12-213, MCA, provides that:

> [a]ny variance from the procedure required by 46-12-211 that does not affect the substantial rights of the defendant must be disregarded.

Given this specific statutory mandate and defense counsel's testimony that he advised Anderson that he could not withdraw his guilty plea and his further testimony that he never advised Anderson that he would be able to withdraw his guilty plea if the trial court refused to go along with the plea agreement, I am able, albeit reluctantly, to conclude that Anderson's substantial rights were not prejudiced. Accordingly, by reason of § 46-12-213, MCA, we must disregard the obvious error of the trial court in failing to advise Anderson that under the § 46-12-211(1)(c), MCA, plea agreement he would not have the right to withdraw his guilty plea if the court did not accept the recommendation in the agreement.

Notwithstanding, Justice Leaphart's dissent raises valid and important concerns. Title 46, MCA, which contains Montana's code of criminal procedure, imposes upon the trial court specific obligations to ensure compliance with various procedures and to advise the defendant of various matters at different stages of the criminal proceedings. That is most certainly true at the entry of plea and sentencing stages. See Title 46, Chapters 12 and 18, MCA.

I believe that implicit in Justice Leaphart's dissent is the admonition that we set a dangerous precedent, indeed, if, in contravention of the clear requirements of the statutes at issue, we allow the obligations which are statutorily imposed upon the

12

trial court to be shifted to defense counsel, to the prosecution or to some other person or process. In that I agree whole-heartedly. While the defendant's substantial rights may not, in fact, be substantially prejudiced by the court's failure to follow the procedures and to give the advice mandated by the code, nevertheless, that should not be a license for the trial court to disregard what the legislature has clearly required, nor should this Court routinely condone such practice.

In some respects, the code of criminal procedure is a cookbook; and, in my view at least, it should be utilized as such. At each stage of the criminal proceedings and in every case, the court must methodically go through the procedures and, step by step, give the advice to the defendant required by the applicable statutes. It is neither defense counsel's nor the prosecutor's obligation to give the advice and ensure the trial court's compliance with the procedures that the legislature has specifically required.

Under the facts of this case and § 46-12-213, MCA, I concur. I do so, however, in recognition that this is a slippery slope which I, for one, am reluctant to proceed along much farther.

_____
Justice

Justices Karla M. Gray and Terry N. Trieweiler join in the foregoing special concurrence.

_____
Justices

13

Justice W. William Leaphart, dissenting.

In our unpublished opinion, issued July 18, 1995, I dissented from our holding on issue number two and our remand for a further hearing. I would have reversed and remanded for a hearing solely on the question of whether Anderson received ineffective assistance of counsel with regard to his appeal rights. I would not have reopened the question of whether counsel, independently of the court, advised Anderson of the binding nature of a plea agreement under § 46-12-211(1)(c), MCA. The record is clear that the plea agreement, the Acknowledgment of Waiver of Rights by Plea of Guilty Form and the District Court all failed to advise Anderson, as required by § 46-11-210(2), MCA, that he could not withdraw his (1)(c) agreement. This omission affected his substantial rights and was *not* harmless error. Consequently, I dissent from the Court's present holding that the District Court's failure to advise Anderson of the binding nature of a (1)(c) agreement did not affect Anderson's substantial rights and was rendered harmless in light of his counsel's advice to him.

Section 46-12-211(2), MCA, clearly requires that in a (1)(c) type plea agreement, "the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." It is conceded that the court did not advise Anderson that he would not be allowed to withdraw his plea. This Court, however, circumvents this clear statutory mandate by holding that Anderson's counsel picked up the slack by explaining to Anderson the implications of a (1)(c) agreement and informed him of the consequences of changing

14

his plea to guilty. The Court holds that Anderson's counsel's advice was sufficient to meet the requirements of § 46-12-210(1), MCA. However, the record of the change of plea hearing contradicts this holding.

The transcript of the change of plea proceeding reads as follows:

> THE COURT: Would you advise the court if this is a 1B or 1C plea agreement.
>
> MR. NEWMAN: Your Honor, this is not a binding plea agreement. The agreement does advise Mr. Anderson and his counsel that the court is free to impose any statutory sentence. The State will recommend that a sentence be given, a particular sentence. We are going to recommend that the defendant be committed to the Montana Department of Corrections and Human Services for a definite period of time; five years on the underlying offense and two years consecutive for the use of a weapon. So we are recommending a commitment to the custody of the department for a definite period of time.
>
> THE COURT: So then is that a 1C?
>
> MR. NEWMAN: I believe it would fit under 1C, Your Honor.
>
> THE COURT: Do you understand that, Mr. Sweeney?
>
> MR. SWEENEY: Yes, Your Honor.
>
> THE COURT: All right. Stand up, Anderson. (The defendant complies.)
>
> THE COURT: Is there a motion?
>
> MR. SWEENEY: Your Honor, thank you. If it please the Court, as the prosecuting attorney told you, we've notified the prosecuting attorney that we wish to move to withdraw our former plea of not guilty, and my client, Jade Anderson, would instead enter a plea of guilty to the charge.
>
> THE COURT: Is that what you want to do today, Mr. Anderson?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Sweeney, have you fully advised your client of the consequences of a change of plea to guilty?

15

MR. SWEENEY: I have, Your Honor, and as Counsel stated for the State that we have entered into that plea bargain agreement, but I've explained to Mr. Anderson that that's not binding on Your Honor, and that you have the right to sentence him in accordance with the state law or to follow that plea bargain agreement, depending on what you want to do.

Although Anderson's counsel advised him, at the change of plea hearing, that the plea agreement was not binding upon the court, the record does not reflect any advice from the court or from counsel that, once Anderson changed his plea pursuant to the agreement, he would not be allowed to withdraw the plea. That aspect is the most significant "implication" of a (1)(c) type plea agreement. The fact that Anderson was advised that the agreement was not binding upon the court does not resolve the issue because a (1)(c) and a (1)(b) are both the same in that respect. That is, neither type is binding *upon the court*. The distinction is that a (1)(c), unlike a (1)(b) is binding *upon the defendant*. The statute requires that the *court* advise the defendant of this distinction. That is, if he enters a plea to a (1)(c) agreement and the court rejects that agreement, he cannot withdraw his plea. The record does not support a finding that the court advised the defendant of the special implications of a (1)(c) agreement.

This Court concludes that, since this was purportedly a (1)(c) agreement, the District Court was not required to allow Anderson to withdraw his plea pursuant to § 46-12-211(4), MCA. That assumes, however, that the defendant understands what a "1C" agreement is after having been properly advised, by the court, of the nature of his commitment. In the absence of such advice from the court, we have no basis for concluding that Anderson understood the nuances

16

of the term of art: "1C." Without the proper admonition from the court, the agreement is, in effect, no different from a (1)(b) agreement and Anderson should be allowed to withdraw his plea. If this issue were before us on a direct appeal, I would reverse and allow him to do so. However, this matter is before us on an appeal from a petition for post-conviction relief. Accordingly, Anderson is procedurally barred from raising any issues which he could have but failed to raise on direct appeal (§ 46-21-105(2), MCA) unless he can show that his failure to raise the issue on appeal was due to ineffective assistance of counsel.

Consequently, I concurred with our remanding this matter for a hearing as to the nature of counsel's advice concerning appeal rights. However, I originally dissented from the remand for a further hearing as to the substance of counsel's advice to Anderson at the change of plea stage and his subsequent advice to Anderson concerning his appeal rights to the extent that such a hearing would open up the question of whether counsel, at the change of plea stage, advised Anderson that a (1)(c) agreement was binding upon him thus rendering the court's omission harmless error.

In my judgment, the statutory requirement (§ 46-12-211(2), MCA) that the court advise the defendant of the consequences of a (1)(c) agreement, *on the record*, was designed to avoid this type of 'tis-t'aint argument between attorney and client. When the plea agreement itself, the Acknowledgment of Waiver of Rights by Plea of Guilty Form, and the hearing record, all fail to disclose the irrevocable nature of the plea, we must assume that Anderson was not properly advised as required by law. There was no basis for

17

giving the prosecution a fourth bite of the apple by remanding for a further hearing in which we pitted counsel against client in hopes of divining what Anderson really knew about (1)(c) agreements independently of what he was informed by the plea agreement, the waiver of rights form or the District Court.

The record is clear that the plea agreement, the waiver form and the court all failed to advise Anderson that he could not withdraw his (1)(c) agreement. This omission affected his substantial rights and was *not* harmless error. The only real question, which remains unanswered, is what advice did counsel give to Anderson concerning his right to appeal based on the District Court's failure to comply with § 46-12-211(2), MCA. If counsel failed to advise him of the omission and of his right to appeal based on that omission, then Anderson is entitled to post-conviction relief.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent of Justice W. William Leaphart.

_____
Justice

18